KAMALA D. HARRIS
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
LANCE E. WINTERS
Senior Assistant Attorney General
A. SCOTT HAYWARD
Deputy Attorney General
XIOMARA COSTELLO
Deputy Attorney General
State Bar No. 187691
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 897-2277
 Fax:  (213) 897-6496
 E-mail:  DocketingLAAWT@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DOUGLAS DANIEL CLARK,** | CV 92-6567-PA |
| Petitioner, | **DEATH PENALTY CASE** |
| v. | **RESPONDENT'S BRIEF RE APPLICABILITY OF AEDPA TO PETITION** |
| **KEVIN CHAPPELL, Warden of California State Prison at San Quentin,** | The Honorable Percy Anderson<br>United States District Judge |
| Respondent. | |

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................1
Procedural History .......................................................................................1
    AEDPA Applies to the Petition Pursuant to *Woodford v. Garceau* ...............3
        A.    Applicable Law...................................................................3
        B.    Petitioner's 1992 Filing Was Not An Application for Federal Habeas Relief Seeking An Adjudication of the Merits of His Claims Under *Garceau*..........................................4
        C.    Petitioner's Argument That the Mere Identification of Claims in a Filing Qualifies It as an Application for Federal Habeas Relief Fails Under *Garceau* .............................7
Conclusion....................................................................................................9

**INTRODUCTION**

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes strict limitations on this Court's review of Petitioner's conviction and sentence. Despite the obvious implications of those limitations, for fifteen years, petitioner never claimed that AEDPA did not apply to his petition. Now, he does. According to petitioner, a 1992 document that this Court construed as a request for counsel was actually an application for habeas relief. But as this Court correctly found, the 1992 filing was nothing more than a request for federal habeas counsel.

While the 1992 filing identified one or more claims, petitioner admitted that the list was incomplete and that he was seeking the appointment of counsel to investigate and raise his claims. The 1992 filing also complained that petitioner's state appeal took too long. (*See* Docket Entry No. 1 at 1-6.) Petitioner first filed an application for federal habeas relief seeking an adjudication of his claims on the merits in April 1997. Thus, contrary to petitioner's newfound assertion (asserted for the first time in his 2013 motion to amend the traverse), AEDPA applies because petitioner did not file an application seeking adjudication of his claims on the merits until April 1997, one year after AEDPA was enacted.

**PROCEDURAL HISTORY**

In 1992, petitioner filed a *pro se* request for federal habeas counsel. (Docket Entry No. 1.) Although petitioner labeled the document a "writ of habeas corpus," in accordance with the substance of the document, this Court construed it as a request for appointed counsel, and granted the request. (Docket Entry No. 31.) For the next five years, petitioner made numerous requests for funds for various investigators and experts, obtained a temporary stay of execution, and repeatedly sought to extend the stay of execution *in order to prepare a petition*. Specifically, in 1994, petitioner sought funds for an investigator, expert and psychosocial historian. (Docket Entry Nos. 55-57, 59.) In 1994, petitioner obtained the initial

temporary stay of execution. (Docket Entry Nos. 49-50.) In 1995, petitioner sought additional funds for a psychosocial historian. (Docket Entry No. 88.) And between 1994 and early 1997, petitioner moved at least ten times to extend the temporary stay of execution *in order to permit the preparation of a petition* along with a specification of non-frivolous issues as required by the local rules. (Docket Entry No. 50, 64, 74, 84, 95, 102, 112, 120, 128, 139.)

On April 23, 1997, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Following a stay of these proceedings for exhaustion, on June 22, 2004, petitioner filed the operative amended petition. Before filing the amended petition, however, petitioner filed a *pro se* motion to remove counsel. (Docket Entry No. 256.) And while that motion was pending, petitioner's counsel raised the issue of petitioner's present mental competence. (Docket Entry No. 258.) In 2011, this Court set deadlines for the parties to file briefs and declarations, and to depose experts. (Docket Entry No. 334.) Those deadlines were continued twice. (Docket Entry Nos. 338, 357.) Then, in 2012, petitioner moved to stay these proceedings on the basis of his alleged mental incompetence. (Docket Entry Nos. 358, 365, 367.) That motion is currently pending before the Court.

On March 13, 2013, respondent filed a notice of recent authority regarding the Supreme Court's decision in *Ryan v. Gonzales*, 131 S. Ct. 696, 184 L. Ed. 2d 528 (2013), which held that a petitioner's current competence in a case governed by AEDPA is generally irrelevant. (Docket Entry No. 373.) Pursuant to an order from this Court, the parties filed briefs regarding the impact of *Ryan v. Gonzales* on petitioner's motion for stay. (Docket Entry Nos. 373, 377, 387.)

This Court has now ordered the parties to file briefs addressing the applicability of AEDPA to the petition. On August 12, 2015, petitioner filed his six-page brief.

# AEDPA APPLIES TO THE PETITION PURSUANT TO *WOODFORD V. GARCEAU*

## A. Applicable Law

In *Woodford v. Garceau*, 538 U.S. 202, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003), the Supreme Court confronted the question whether the filing of a request for counsel, an application for a stay of execution, and a specification of non-frivolous issues was sufficient to comprise an application for federal habeas relief. If so, AEDPA would not apply to Garceau's petition because those documents were filed before AEDPA's effective date. Specifically, if the petitioner "had before a federal court an application for federal habeas relief seeking an *adjudication* on the *merits* of the petitioner's claims, then amended § 2254(d)" would "not apply." *Id*. at 207 (first emphasis added).

If, on the other hand, the petitioner did not have pending an "application for federal habeas relief seeking an adjudication on the *merits* of the petitioner's claims" before AEDPA's effective date, then the subsequently-filed petition would be reviewed under AEDPA. *Id*. (emphasis in original). So, if the application for counsel, application for temporary stay of execution, and specification of non-frivolous issues did not seek "an adjudication on the merits of the petitioner's claims," then the petition would be reviewed under AEDPA. *Id*. at 210. And that would remain true "even if other filings by the same applicant—such as a request for the appointment of counsel or a motion for a stay of execution—were presented to the federal court prior to AEDPA's effective date." *Id*. Simply put, a case does not become "'pending' until an actual application for habeas corpus relief *seeking an adjudication on the merits* of the petitioner's claims is filed in federal court." *Id*. (last emphasis in original).

In reaching this conclusion, the Supreme Court specifically rejected the notion that the "'Specification of Non-Frivolous Issues" placed the *merits* of [the petitioner's] claims before the District Court before AEDPA's effective date."

3

*Garceau*, 538 U.S. at 210 n.1. Rather, the specification of issues simply stated that the petitioner's counsel "believe[d] the following federal constitutional issues *exist[ed]* in this case and [were] *among* the issues" that could be raised in a petition. *Id*. (emphasis added).

As the Court explained, "[t]he clear import" of that language was "that the filing itself did not seek any relief on the merits or place the merits of [Garceau's] claims before the District Court for decision. Rather, the document simply alerted the District Court as to some of the possible claims that might be raised by [Garceau] in the future." *Id*. Indeed, the application for relief Garceau "eventually filed contained numerous issues that were not mentioned in the 'Specification of Non-Frivolous Issues.'" *Id*. In sum, Garceau's motion for counsel, application for a stay, and specification of non-frivolous issues did not comprise an application for habeas relief seeking an adjudication of the merits of his claims. *Id*. As a result, his subsequently-filed petition was governed by AEDPA.

### B. Petitioner's 1992 Filing Was Not an Application for Federal Habeas Relief Seeking an Adjudication of the Merits of His Claims Under *Garceau*

*Garceau* is dispositive of the issue before this Court. Like *Garceau*, where the "Specification of Non-Frivolous Issues" did not place the merits of those claims before the district court, the *pro se* document that petitioner filed in 1992 did not seek an adjudication of the merits of claims. Petitioner first complained that the state appellate process was taking too long and that a state habeas petition had not yet been prepared. Indeed, the first *six* pages of the ten-page document were devoted to petitioner's complaints about the state appellate process. (*See* Docket Entry No. 1 at 1-6.)

Petitioner then said: "*Before listing the issues*, which include the direct appeal issues, scores of *non-prepared* writ issues, and even a strong attack upon the validity of this state's comical scheme where the prosecution controls all counsel in this matter, Petitioner *seeks counsel to investigate the case for same*." (Docket

4

Entry No. 1 at 7, emphasis added.) In other words, *before* presenting this Court with his claims for an adjudication of the merits of those claims, petitioner asked for the appointment of counsel to investigate his claims. (Docket Entry No. 1 at 7, emphasis added.) Indeed, petitioner specified that he needed counsel appointed because there were "*scores* of *non-prepared* writ issues" that counsel would need to investigate. (*Id.*, emphasis added.) Petitioner lamented that "it is down right silly to limit subsequently appointed counsel to those issues is [sic] layman-client could identify and list in sufficient legalese, within *this pro se filing for counsel* and notice of writ. (Docket Entry No. 1 at 7, emphasis added.) Petitioner's statement reflects that he did not want counsel to be limited to the claims he as a layman could identify in his request for counsel and "*notice* of writ." (*Id.*, emphasis added.)

Petitioner then identified one of the issues that he believed had "never properly been briefed," an alleged *Faretta* error, and complained about the state court's resolution of his *Faretta* claim. (Docket Entry No. 1 at 7-8.) Petitioner stated that his *Faretta* issue would "surely cause a reversal at the federal level, and thus should be heard poste haste." (*Id.* at 8, capitalization omitted.) But petitioner then asserted the following in support of his request for counsel: "All issues are therefore available at this point, *once counsel has a chance to identify and list them for the Court*." (Docket Entry No. 1 at 8, emphasis added.)

Under the next heading entitled "COUNSEL[,]" petitioner stated that he "urges this court to select one trial *counsel*, *to investigate and prepare* the three compatible defenses the drunk trial counsel refused to investigate . . . IAC issue and claim of actual innocence, and proof of the actual persons who committed the crimes[.] Then, a very experienced and bright appellate counsel who is not a mechanic at law, but who knows decisions like Faretta, Gideon, and Miranda were not on the books before their lawyers raised those issues on appeals." (Docket Entry No. 1 at 8-9, underlining and capitalization omitted.) Following further

complaining about his state appellate lawyers, petitioner identified—in the very last sentence of his request—a particular lawyer whom he believed was suited to represent him: "Robert Ryan, for example, is the precise type of counsel this case needs: familiar with capital appeals, and with trial duties of counsel." (Docket Entry No. 1 at 9, capitalization omitted.) Petitioner made no request for federal habeas relief at the end of the filing.

By seeking the appointment of counsel *before* presenting his claims to this Court for an adjudication of the merits of the claims, asking for counsel to be appointed to investigate "scores of non-prepared writ issues," expressing that he did not want counsel to be limited to the claims petitioner could personally identify as a layman, and characterizing his filing as a request for counsel and "notice of writ," petitioner was expressly disclaiming any notion that the document itself was an application for habeas relief seeking an "adjudication on the *merits* of" the claims. *Garceau*, 538 U.S. at 207.

Rather, as in *Garceau*, "[t]he clear import" of the language of the 1992 filing is that "the filing itself did not seek any relief on the merits or place the merits of [petitioner's] claims before the District Court for decision. Rather, the document simply alerted the District Court as to some of the possible claims that might be raised by [petitioner] in the future." 538 U.S. at 210 n.1. In fact, petitioner himself characterized the document as a "notice" that he would be filing a petition that included not only the identified claims, but also "scores of non-prepared" claims. (*Id.*, emphasis added.) And, like *Garceau*, the habeas corpus application petitioner "eventually filed contained numerous issues that were not mentioned" in his request for counsel. *Id*.

Since the 1992 filing was not an application for federal habeas relief seeking an adjudication of the merits of petitioner's claims, AEDPA applies to the 1997 petition.

/ / /

6

### C. Petitioner's Argument That the Mere Identification of Claims in a Filing Qualifies It as An Application for Federal Habeas Relief Fails Under *Garceau*

Petitioner argues that a state prisoner files an application for federal habeas relief whenever he "merely *asserts* in federal court a federal basis for relief from a state court's conviction[.]" (Pet. Brief at 2-3.) Petitioner derives that definition from *Gonzalez v. Crosby*, 545 U.S. 524, 530, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005), which he claims "clarified the terminology in *Garceau*." (Pet. Brief at 2.) Petitioner thus appears to suggest that *Gonzalez* altered the definition of an "application for federal habeas relief seeking adjudication on the *merits* of the petitioner's claims" articulated in *Garceau*. 538 U.S. at 207 (emphasis in original). But *Gonzalez* did no such thing.

The issue in *Gonzalez* was whether motions filed pursuant to Rule 60(b) of the Federal Rules of Civil Procedure "are subject to the restrictions that apply to 'second or successive' habeas petitions." 545 U.S. at 526. To decide that question, the Court asked whether the petitioner's Rule 60(b) motion asserted one or more "claims." *Id*. at 531. The Court provided two examples in which a Rule 60(b) motion clearly asserts a claim: first, when the motion "seeks to add a new ground for relief;" and, second, when the motion "attacks a federal court's previous resolution of the claim *on the merits*." *Id*. at 532 (emphasis in original). Petitioner does not address the *Gonzalez* court's definition of "claim."

Rather, petitioner wrenches the terms "asserts" and "claim" out of context in order to argue that the mere articulation or identification of a claim in a filing qualifies it as an application for federal habeas relief. (Pet. Brief at 2-3.) Specifically, petitioner argues that his 1992 filing qualifies as an application simply because it "set[] forth" petitioner's claims of ineffective assistance of counsel and "contained" federal claims. (Pet. Brief at 5-6.) But that approach was expressly rejected in *Garceau* when the Court concluded that a specification of non-frivolous

issues—which by definition sets forth and contains claims—was insufficient to "place[] the merits" of the petitioner's claims before the district court. *Garceau*, 538 U.S. at 210 n.1. Rather, the filing simply "alerted the District Court as to some of the possible claims that might be raised by [the petitioner] in the future." *Id*. Further, the *Gonzalez* court had no occasion to examine whether an initial filing such as a specification of non-frivolous issues comprised an application for federal habeas relief, particularly considering that it would necessarily contain certain claims.

Petitioner also appears to imply, but does not argue, that the statement in his 1992 filing—that the state court's decision on his *Faretta* claim "will surely cause a reversal at the federal level, and thus should be heard post haste"—somehow transformed his request for counsel into an application for federal habeas relief. (Pet. Brief at 5; Docket Entry No. 1 at 8 (capitalization omitted).) But petitioner simultaneously made numerous statements to the effect that he was not yet ready to submit an "application for federal habeas relief seeking an adjudication on the *merits* of his claims" by stating that (1) there were "scores of non-prepared writ issues" that he wanted future appointed counsel to investigate; (2) he did not want to be limited to the issues that he as a layman could identify; (3) he was seeking the appointment of counsel *before* presenting his claims to the Court for an adjudication of the merits because he needed counsel to investigate his claims; and (4) his claims would be asserted "once counsel has a chance to identify and list them for the Court." (Docket Entry No. 7-10.) And, by his own account, petitioner was merely filing a "notice of writ." (Docket Entry No. 1 at 7.)

Moreover, petitioner has not identified any authority for the proposition that a petitioner can legitimately ask the court to adjudicate his claims in piecemeal fashion—let alone that he could present a single claim for adjudication while investigating a host of other *potential*, unidentified claims. Nor does petitioner point to any authority that such a request, even if he made one, would transform his

filing into an "application for habeas relief seeking an adjudication on the *merits of*" his claims. *Garceau*, 538 U.S. at 207 (emphasis in original). As noted, petitioner does not even make that argument. Instead, it is far more likely that petitioner's statement that his *Faretta* claim would cause a reversal and thus should be reviewed post haste was simply hyperbole, consistent with the overall tone and tenor of the filing. (Pet. Brief at 5, stating that the "language" of the 1992 filing "is intemperate and caustic.")

## CONCLUSION

For the foregoing reasons, the Court should find that the petition filed in April 1997 is governed by AEDPA.

Dated: September 2, 2015

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
LANCE E. WINTERS
Senior Assistant Attorney General
A. SCOTT HAYWARD
Deputy Attorney General

/s/ Xiomara Costello

XIOMARA COSTELLO
Deputy Attorney General
*Attorneys for Respondent*

XC:mol
LA1994XW0004
61660900.doc

9